Maher et al., Trustee, v. The Isaac Smead Heating and Ventilating Co.

# MORTGAGES.

[Lucas Circuit Court, February 20, 1896.]

MAHER ET AL., TRUSTEE, THE ISAAC SMEAD HEATING AND VEN-
TILATING CO.

PRIORITY OF LIEN OF SECOND MORTGAGE, WHERE FIRST DOES NOT DESCRIBE
THE PROPERTY SPECIFICALLY.

S. carrying on the business of contracting for and putting in heating apparatus
and being the owner of certain property, gave a mortgage to secure a loan of
money to enable him to proceed with his business, which mortgage contained
a provision that it should cover the real estate specifically described, owned
by S. and also any which he might thereafter acquire, which mortgage was
duly recorded. Subsequently S. concluded to manufacture the apparatus he
had previously been dealing in, and purchased real estate and erected a
foundry and shop and gave another mortgage to secure an additional loan of
money, which mortgage described the foundry property specifically. *Held*,
That the owners of the notes secured by the second mortgage had a lien
upon the foundry property, prior in order to, and better in right, than the
holders of the notes secured by the first mortgage, which did not describe
the foundry property.

KING, J.

This case is submitted to the court on a motion to strike out certain
paragraphs from the answer and cross-petition of the defendant, Arthur
J. Secor. The motion raises substantially this question : whether a cer-
tain mortgage given by Isaac D. Smead, which contained a provision in
it that it should cover not only the specific real estate described in the
mortgage, but also that which the grantor might thereafter acquire, does
actually cover certain after-acquired property.

Isaac D. Smead, at the time of the execution of the first mortgage,
was carrying on the business of putting in heating and ventilating
apparatus, and soon after the execution of the mortgage known as the
first mortgage in these proceedings, there was organized by Mr. Smead
and others a corporation known as the I. D. Smead Heating and Ven-
tilating Co., and shortly afterwards Isaac D. Smead individually
purchased certain lands in the city of Toledo, with the object in
view at the time of the purchase of erecting thereon a foundry for the
purpose of manufacturing and constructing the iron and steel work
necessary to go into the heating and ventilating apparatus that he before
that time had been contracting for and selling, and which the heating
and ventilating company were then contracting for and selling. Pre-
viously the work and labor of casting the various materials had been
let out on contract to other parties. After the purchase of this
land in question with the view of constructing a foundry thereon, a found-
ry was erected ; and there are allegations by way of answer tending to
show that the money received from the notes which were negotiated and
secured by the first mortgage, or some of it, at least, went into the erec-
tion of this foundry building. After or about the time the foundry build-
ing was completed, Isaac D. Smead gave a second mortgage which des-
cribed specifically the property which had been used for foundry purposes
as well as all the property described by the first mortgage. This contro-
versy is between the holders of the notes or bonds secured by the first
mortgage and those secured by the second mortgage as to the fund arising
from the foundry property.

It is claimed by the holders of the first mortgage notes and bonds that the description in the mortgage of after-acquired property gives them the right, after the recording of their mortgage, to have a lien upon all the property owned by Isaac D. Smead at the date of its execution and also upon any that he might acquire afterwards. This is opposed, mainly on the ground that the recording acts requiring incumbrances of that ʹkind to be recorded would prevent a lien created in such a manner from resting upon property not described in the conveyance. The act in question is sec. 4133, and requires all mortgages executed agreeably to to the provisions of that chapter to be recorded in the office of the recorder in the county in which the mortgaged premises are situate, and provides that they shall take effect from the time they are delivered to the recorder of the proper county for record. That is all of the statute that it is necessary to read.

This question has never been directly decided in this state There are some decisions, however, which bear upon the effect of this recording act, which, in our judgment, should have great weight in controlling the effect to be given to ʹ a mortgage as against subsequently acquired interests in the property, not owned by the mortgagor at time of giving the first mortgage. The first of these cases where the question is referred to,ʹ is in 4. O. S., 45, where the court considered the effect of an agreement to give a mortgage as against a general assignee, and said, if it were to be decided upon general principles, the right of the complainants to the relief which they sought would seem clear; that upon equitable principles an agreement in writing for a mortgage is a valid contract, fixing a specific lien upon the property to be mortgaged, and it will be specifically enforced by a court of chancery against the party and all subsequent purchasers from him with notice, as well as against any general assignment, either voluntary or by operation of law. Then the court proceed to refer to several cases that had been previously decided in Ohio bearing upon both the general equity principles which the court had referred to, and the effect tc be given to the statue relating to the recording of mortgages, which at that time was substantially, if not exactly, the same as now. Then the court say on page 54:

"No one of these cases was decided in ignorance of the general principles to which we have alluded, and in every one of them a different conclusion would have been arrived at, if these principles could have furnished the rules of adjudication. But it was perfectly competent for the legislature to change or modify these rules, and when it had done so, no·discretion was left to the judicial tribunals to depart from the express commands of the legislative body. Those commands the courts have regarded as explicit; the statute expressly declaring, that mortgages do and shall take effect and have preference, "from the time the name are delivered to the recorder of the proper county, to be by him entered on record." To give them any effect before, as against the persons intended to be protected by this statute, would be to repeal it *     *    *    *    The principle deducible from all the cases is, that the legal rights of such persons can not be displaced, at the instance of the holder of a prior unrecorded mortgage, or contract for a mortgage, although acquired with notice of such mortgage, or of the existence of such contract; the object of the law being to avoid all the vexed questions of notice, actual or constructive, in determining priorities of liens. So far as may

be necessary to their protection, such a thing as an equitable mortgage is wholly unknown."

We are cited to a case in 10 O. S., 372, where a question arose upon a mortgage of railroad property and its fixtures and equipments, with all the appurtenances, income and resources thereof. In deciding the case, which was decided upon another point than the one that I am talking about, the court said on page 390:

"We have to inquire, in the next place, whether the provisions so extended the powers of the corporation as to authorize a pledge or mortgage of the property not existing, or not owned by the corporation, at the time of the pledge or mortgage, but to be thereafter acquired. It is admitted that the general powers of the corporation being in this respect no greater than those of an individual, would not authorize a legal pledge or mortgage of such property. In this state, under the construction of our registry laws, it is quite clear that a mortgage of lands to be afterwards acquired, being a mere contract to convey such lands as a security, or, as it has been termed, an equitable mortgage, can have no validity against third persons who acquire legal interests in, or liens upon, the property."

Then the court quotes with approval the last paragraph that I read in the case of *Bloom* v. *Noggle*, 4 O. S., 54. The statement of the court in that connection was only introductory to another question which the court proceeded to discuss in that case.

We were cited by attorneys for Secor to a case in 38 O. S., which, so far as it bears upon this question, does not at all change the holdings of the courts upon the question as to what were legal or equitable mortgages in this state. In that case the court cited and referred to with approval all the previous cases, including that in 4, O. S., and the case *Coe* v. *R. R. Co.*, 10, O.S., 374. The expression contained in 10, O. S., is perhaps the only one to be found in the opinion of the court directly referring to this question in Ohio, in which they say: "It is quite clear that a mortgage of lands to be afterward acquired, being a mere contract to convey such lands as a security, or, as it has been termed, an equitable mortgage, can have no validity against third persons who acquire legal interests in, or leins upon the property."

And then following the court and the learned judge who delivered the opinion in *Bloom* v. *Noggle*, the court apply the same reasoning to a mortgage that seeks to cover after acquired property.

There are cases in Ohio claimed to be contrary of this doctrine. The cases, however, that have been decided upon that point, are cases of the mortgage of railroad property by railroad companies, and they are sustained upon a variety of grounds. In the first place, in Ohio, the statute which authorizes the borrowing of money and the mortgaging of property by railroad companies (sec. 3287), contains an express provision that they may mortgage their income. In the second place, the reasoning upon which most, and perhaps all, of these decisions is based, is that the necessities of railroad construction require that they should be permitted to pledge or by mortgage to cover by these conveyances the entire property which they have or which they hope to have by construction. As if, applying that reasoning to an individual, one were to put a mortgage upon a naked lot of land, and should thereafter proceed to construct an expensive building upon it, the mortgage would, of course, cover this new stucture. It would be the first lien upon the property, although other means and other moneys might have gone into the building of it. So a railroad is

considered as a single structure from one end to the other, including all of its side-tracks, depots, yards, grounds and shops, necessary for carrying on the work that was designed by its incorporation. That is one of the particular reasons that is given for holding a mortgage of after-acquired property by a railroad company to be valid, which reasoning, of course, does not apply to an individual.

It is argued in this case that here was one scheme, one project, in view, in buying this land and in the construction of this foundry—it was only one of the things that was taken into consideration in carrying forward this business. But it is not necessarily so. It is not true that the erection of the foundry was any part of the business of I. D. Smead & Co.; in fact, it was no part of it, until it was concluded that it would be better for the parties managing the affair to build these furnaces themselves than to have somebody else do it. Then was conceived the idea of buying some land and constructing a foundry, and there build or have cast these furnaces. Then they bought this land, and then put up this foundry. They gave a mortgage for the purchase money, which is not here contested, and then they gave another mortgage which describes this specific property. Now, from the authorities to which I have referred in this state, from the effect which our courts have given to the recording acts, we are of the opinion that this first mortgage should not take the proceeds of this foundry property which is not included within its description as against the mortgagees in the mortgage that does describe it. We are quite well satisfied that it is not the law that the holders of the notes secured by the first conveyance should take those proceeds.

I might say that this is perhaps well supported in another case in 4 O. S., 481, relating to personalty, and also in a case cited from Massachusetts in 39 N. E. Rep., 1004, which was a mortgage of both realty and personalty. It seems to be very clearly settled in case of personalty that a mortgage will not carry after-acquired property, unless possession be taken before anybody else acquires any interest in it. It also seems to me that if this were a new question, regardless of the decisions that have been made in this state, equity to all the parties would require that we should hold that the mortgage did not convey this property as against those who have acquired interests in it afterwards. Certainly the purpose of this statute requiring these instruments to be recorded is to give notice to those who may be called upon to extend credit or to acquire liens or interests in the property. The notice given by such a mortgage as this first one is absolutely worthless; it would not be considered or regarded, as was said here in argument, by an abstracter who was getting up an abstract of title, for one reason at least, that at the time when the mortgage itself was given, executed, and filed for record, the grantor in it did not own, and in this case apparently had no intention of owning, the specific real estate which he afterwards acquired. He might have had some undefined project that he would erect a foundry, but where it was to be erected had not certainly received any consideration, and it would only be erected when he could acquire the land necessary to erect upon it. And when the mortgagor did secure the land and did erect an immense structure there, and then gave a mortgage upon it to secure other people who had loaned him money, it would certainly be inequitable to say they should not have the security conferred by their mortgage as against those who had taken these notes and bonds issued

long before this property had been purchased or this property constructed.

This disposes of the question that is sought to be raised by this motion, and an entry may be prepared in conformity with this opinion.

*King & Tracy*, for Plaintiff.

*G. H. Beckwith*, for Defendant Secor.